### FLORIDA REAL ESTATE COMM., et al v. POSTOL, et al.

Circuit Court, Dade County, Civil Appeal.
November 1, 1951.

Sibley & Davis, Miami Beach, for appellants.

George B. Carter, Orlando, for appellees.

STANLEY MILLEDGE, Circuit Judge.

The Florida Real Estate Commission suspended for three months the registration of Joe Cohen as a real estate broker, and Joseph M. Postol as his real estate salesman. From these orders appeals are taken. Since both cases involved the same transaction one record sufficed for both cases, which have been heard together.

The commission, in its order of suspension, has undoubtedly stated all the facts it thinks necessary to the conclusion, but it omits pertinent and undisputed facts. The additional facts I refer to do not constitute a disagreement with the commission's findings, for they are undisputed statements from commission witnesses.

I do not quarrel with the commission's finding that Postol did not tell Miller, before the latter signed with Feinstein, that Mrs. Plever wanted to buy the property for $42,500. The additional facts, however, eliminate the inference of wrongdoing.

Miller, after he had accepted Feinstein's offer of $40,000 for the house, talked with Mrs. Plever and, apparently in the presence of Postol, told Mrs. Plever that the house was definitely sold. Mrs. Plever asked Postol (not in the presence of Miller) if there was no way she could get the house. Postol replied "talk to Mr. Miller, it is out of my hands; I don't know how it could be done." Mrs. Plever then talked to Miller, who said that he would sell her the house at a figure higher than Feinstein's.

Mrs. Plever refused to do this, saying that she didn't wish to become involved in a lawsuit since Miller had already sold the house. Later, as Mrs. Plever was leaving the Miller house, Postol told her that he would talk with Feinstein, since Mrs. Plever felt so badly about losing the house. So Miller knew all about Mrs. Plever's desire to buy the house and Postol knew that Miller knew this. They were all at the Miller house together discussing these things and Postol had told Mrs. Plever to talk to Miller about her desire to buy. Not until after Mrs. Plever refused to participate in a repudiation of the Feinstein agreement did Postol say he would consult Feinstein.

What Postol admitted was that he had not told Miller that Mrs. Plever had offered Feinstein $42,500. In view of what had preceded this offer there could be no point in conveying this information to Miller, even if it be assumed that Postol owed no duty to Feinstein.

Here, I think, we touch upon the commission's misconception of the governing rule of law. The commission treats the situation as if the offer of Feinstein had not been accepted. They say that *until a binding contract was entered into by the seller* it was the duty of Postol to make known to the seller the desire of Mrs. Plever to purchase the property at a greater price.

Actually, a broker owes a fiduciary duty to a buyer as well as a seller. Once a prospect's offer has been accepted and his earnest money held, he has acquired a status requiring the active good faith of the broker. There is no difference between the position of the vendee at that stage and the moment a written contract has been executed, except that the statute of frauds as a defense has been eliminated. Obviously, the broker is not at liberty to induce the vendor to repudiate his agreement.

To bring before the vendor, at this stage, a still further and higher offer could have no purpose by the broker except to repudiate the prior agreement. It seems strange to me that we can talk of disciplining a man for unethical conduct because he did not induce the repudiation of an agreement. The matter is even stranger when we recall (what I think has been overlooked) that such ·conduct by the broker also constitutes an active breach of trust to the vendee.

Postol owed Feinstein the duty of doing everything in his power to see that the property was sold in accordance with Feinstein's offer and Miller's acceptance. Mrs. Plever's offer came too late to justify the broker's further intervention. The broker could ethically make no distinction between an agreement to which Miller might plead the statute of frauds, and one to which he could not. Quinn v. Phipps (Fla.), 113 So. 419, is authority for the proposition that Feinstein had acquired a status demanding the active good faith of the broker. So, if we take the commission's choice of facts and apply what I think is the correct rule of law, we must reverse. If we accept the commission's rule of law and add the pertinent facts their order omitted, we must also reverse. The appellants, of course, are entitled to a consideration of all the facts as well as the application of correct rule.

The Postol case and the Cohen cases are companions. The evidence is identical. Reversal of the Postol case, a fortiori, calls for reversal in the. Cohen case, since Cohen had no participation additional to that of his salesman.

Even if there were some basis for disciplinary action against Postol there is no evidence against Cohen other than the fact that he returned to Feinstein the latter's deposit of $8,000

without Miller's consent. I believe that, technically, the Miller-Feinstein and the Feinstein-Plever transactions should have been kept distinct in every literal way. Under the circumstances of having Mrs. Plever's $8,000 deposit, the return of Feinstein's check had no legal significance and could harm no one. Some slight latitude must be allowed when the transactions are unusual, no harm is intended, and no harm results.

The suspension orders of the commission are reversed, both as to Joseph M. Postol and as to Joe Cohen.